IN THE UNITED STATES DISTRICT COURT
FOR RHODE ISLAND

THE HARTFORD INSURANCE COMPANY, as Subrogee of ALBERTO CARVALHAL

Plaintiff

v.

GENERAL ELECTRIC COMPANY and MIDEA USA, INC.

Defendant

No. CA 06 362 S

EUGENIA CARVALHAL

Plaintiff

v.

GENERAL ELECTRIC COMPANY and MIDEA USA, INC.

Defendant

No. CA 07 007 S

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO PRECLUDE THE TESTIMONY OF THE PLAINTIFFS' EXPERT WITNESSES AND FOR SUMMARY JUDGMENT**

NOW COME the Defendants, MIDEA USA, INC. and GENERAL ELECTRIC COMPANY, and for their Reply in Support of their Motion to Preclude the Testimony of the Plaintiffs' Expert Witnesses and for Summary Judgment, states as follows:

## I. DEFENDANTS' MOTION IS NOT PROCEDURALLY PREMATURE

The Defendants' Motion to Exclude the Plaintiffs' Experts sets forth both the legal basis and factual justification for bringing the subject Motion at this time. Based upon the legal authority and arguments set forth therein, the Court should reject Plaintiff Eugenia Carvalhal's claim that Defendants' Motion to Exclude the Plaintiffs' Experts is procedurally premature. The

Federal Rules of Evidence apply in diversity proceedings because they address procedural matters, were duly passed by Congress, and shall be presumed constitutionally valid unless they cannot rationally be characterized as rules of procedure. *Cameron v. Otto Bock Orthopedic Industry, Inc.*, 43 F.3d 14, 19 (1st Cir. 1994). Specifically, the exclusion or admission of testimony is governed by the Federal Rules of Evidence in diversity cases. *Forrestal v. Magendantz*, 848 F.3d 303, 305 (1st Cir. 1988).

Therefore, Plaintiff Eugenia Carvalhal's reliance on Rhode Island Rule of Evidence 104 and *State v. Quattrocchi*, 681 A.2d 879 (1996), regarding whether a preliminary hearing is warranted in this case is wholly misplaced. A preliminary hearing to determine the admissibility of expert testimony is unquestionably a process of procedure. Further, as the First Circuit has previously held in *Forrestal* and based on the Erie Doctrine followed by the federal courts, questions of the admissibility of testimony, especially expert testimony, is governed by the Federal Rules of Evidence. Rhode Island's own state Rules of Evidence have no bearing on this case and cannot be relied upon by Plaintiff.

Plaintiff is confusing the issue by asserting inapplicable law in her Objection. The application of *Daubert* in *Quattrocchi* is not relevant to this case. In *Quattrocchi*, *Daubert* is being applied in the context of the Rhode Island Rules of Evidence, rather than the procedures provided in the Federal Rules of Evidence. Any ruling made by the *Quattrocchi* court does not control this Court, as the two courts are required to apply two different sets of Rules of Evidence. Therefore, Plaintiff's argument relying on Rhode Island Rule of Evidence 104 is inconsequential and has no bearing on this case. Thus, Defendants' Motion to Preclude Evidence and for Summary Judgment should be granted as it is not procedurally premature in nature.

## II. PLAINTIFFS' EXPERTS ARE NOT QUALIFIED TO RENDER OPINIONS IN THIS CASE

Prior to considering whether an expert's opinions are based upon sufficient facts and data and their conclusions have been derived through the use of reliable methods, the threshold question as to whether or not a witness possesses the requisite knowledge, skill, experience, training and/or education must first be answered. (FRE 702) Contrary to the claims in the Plaintiffs' Objection, Hossein Davoodi, Ara Nalbandian and Michael Cooney lack sufficient expert qualifications to render cause and origin opinions in this matter.

### A. Hossein Davoodi Lacks Sufficient Qualifications and Expertise to Opine in this Case

To assess Mr. Davoodi's qualifications to render opinions in this case, one must take into account the nature of his conclusions. Mr. Davoodi admits that he lacks adequate expertise to opine on what "caused" the ignition of this fire, and that his testimony is only offered to place the "origin" of the fire within the water dispenser located in the Carvalhals' kitchen on the day of this incident. (Defendants' 3rd Supp. SMF, p. 2, para. 2). For Mr. Davoodi to be qualified to offer reliable opinions regarding the origin of the fire within the water dispenser, there must be some evidence that he possesses the requisite knowledge, skill, experience, training or education. While Mr. Davoodi claims that he has investigated over four hundred fires, the Carvalhal incident was the first and only fire where a water dispenser was involved. (Defendants' 3rd Supp. SMF, p. 2, para. 2). Moreover, Mr. Davoodi has never been involved with the design or manufacture of a water dispenser or any other consumer product. (Defendants' 3rd Supp. SMF, p. 2, para. 2). In the absence of a showing of any specific expertise regarding water dispensers, Mr. Davoodi lacks adequate foundation to opine that the origin of the Carvalhal fire was inside the water cooler at issue.

## B. Ara Nalbandian Lacks Sufficient Qualifications and Expertise to Opine in this Case

Plaintiffs' objection overstates Mr. Nalbandian's qualifications and expertise as it pertains to water dispensers. While Mr. Nalbandian claims to have been involved in the design of a water heater for residential use, he noted that those water heaters were powered using natural gas or oil, and he has never worked on the design of an electric water heater. (Defendants' 3rd Supp. SMF, p. 3, para. 6). Mr. Nalbandian acknowledged that he is not an electrical engineer. (Defendants' 3rd Supp. SMF, p. 3, para. 6). Significantly, he testified that he has never been involved in the design of a water dispenser. (Defendants' 3rd Supp. SMF, p. 3, para. 6). Mr. Nalbandian has never worked as a consultant for any manufacturers of an electrical appliance. (Defendants' 3rd Supp. SMF, p. 3, para. 6). Ultimately, he stated that he has never investigated a residential fire involving a water dispenser similar to the one in the Carvalhal case. (Defendants' 3rd Supp. SMF, p. 3, para. 6). In the absence of a showing of any specific expertise regarding water dispensers, Mr. Nalbandian lacks adequate foundation to opine that the water cooler at issue was defective and was the proximate cause of the Carvalhal fire.

## C. Michael Cooney Lacks Sufficient Qualifications and Expertise to Opine in this Case

Plaintiffs likewise overstate Mr. Cooney's qualifications to render cross-opinions in this matter. While it is true that Mr. Cooney was involved in the investigation of another fire involving a water dispenser, he admitted that the issue in that case involved the failure of a water dispensing mechanism. (Defendants' 3rd Supp. SMF, p. 4, para. 7). Because Mr. Cooney was unable to recall the specific details of that prior investigation, his prior experience in this regard by no means establishes his expertise to address the specific issues in this case (*e.g.*, failure of temperature control sensors, malfunction of a water heating unit, and ignition of plastic components). *Id.* Significantly, Mr. Cooney admitted that during his prior investigation of a

water dispenser fire **he had access to, and performed testing on an exemplar, prior to reaching his opinions in that case.** (Defendants' 3rd Supp. SMF, p. 4, para. 7). Despite that prior experience, Mr. Cooney admits that he is not an expert regarding electrical systems incorporated into consumer products such as the Carvalhal water dispenser. (Defendants' 3rd Supp. SMF, p. 4, para. 7).

Ultimately, Mr. Cooney stated that because the prior water dispenser fire actually occurred in a commercial setting, the Carvalhal case was the first time that he has been involved in the investigation of a residential fire. (Defendants' 3rd Supp. SMF, p. 4, para. 7). Mr. Cooney testified that none of his formal education was in the area of fire cause and origin investigations. (Defendants' 3rd Supp. SMF, p. 4, para. 7). He has likewise never taken any seminar, classes or received any certifications as a fire cause and origin investigator. *Id.* Mr. Cooney has never worked for a fire department, State Fire Marshall's Office, or any other entity responsible for conducting a cause and origin investigation. *Id.*

Mr. Cooney acknowledged that he is not an expert in product design or product manufacturing. (Defendants' 3rd Supp. SMF, p. 4, para. 8). Likewise, he is not an expert in the evaluation of heat sensing switches. *Id.* Due to his lack of qualifications in these areas, Mr. Cooney stated that he would not be offering any opinions regarding those issues as it pertains to the Carvalhal case. *Id.* Finally, Mr. Cooney acknowledged that the thermal sensors which allegedly malfunctioned in this case are electrical devices, and he does not have expertise regarding electrical devices. (Defendants' 3rd Supp. SMF, p. 4, para. 8). In the absence of a showing of any specific expertise regarding water dispensers, Mr. Cooney lacks adequate foundation to opine that the water cooler at issue was defective and was the proximate cause of the Carvalhal fire.

## III. PLAINTIFFS' EXPERTS FAILED TO GATHER ADEQUATE EVIDENCE AND DID NOT UTILIZE SCIENTIFICALLY SOUND METHODOLOGY

Assuming, *arguendo*, that this Court was to conclude that Mr. Davoodi, Mr. Nalbandian, and/or Mr. Cooney possessed sufficient expertise to render opinions in this matter, these experts' respective credentials do not relieve the Plaintiffs of their burden of proof to show that their conclusions were reached via reliable scientific means. As acknowledged in Plaintiffs' Objection, Federal Rule of Evidence 702 provides that even if an expert is qualified, his or her opinions must be (1) based upon sufficient facts or data; (2) the product of reliable principles and methods, and (3) the expert must apply said principles and methods reliably to the facts of the case. (FRE 702). In this instance, *none* of the Plaintiffs' experts are able to satisfy *any* part of this three prong test. To the contrary, they failed to collect or develop sufficient facts or data, and did not utilize reliable principles and methods. Ultimately, because the scientific method was not reliably applied to what little evidence that Plaintiffs' experts gathered or generated in this case, they must be barred. Simply put, Mr. Davoodi's, Mr. Nalbandian's, and Mr. Cooney's flawed investigation of the cause and origin of the Carvalhal fire did not yield sufficient facts or data to support their respective opinions in this case. What little evidence Plaintiffs' experts did manage to develop was not collected, processed, nor evaluated in a scientifically sound manner, which makes their opinions unreliable and unsound. Because their respective conclusions were not arrived at in a scientifically sound and methodologically reliable fashion, they must be barred from testifying in accordance with Rule 702 and *Daubert*.

### A. Hossein Davoodi's Opinions are Not Scientifically Reliable

The Defendants' criticisms of Mr. Davoodi's flawed investigation of the Carvalhal fire scene are well founded and require that he be barred as an expert witness. In contrast, the arguments set forth in the Plaintiffs' Objection are unsubstantiated and rely upon dubious logic.



1131440.1

Moreover, Plaintiffs' counsel appears to have misconstrued various aspect of the Defendants' Motion to Exclude.

Preliminarily, Defendants challenge Plaintiffs' assertion that Mr. Davoodi's inspection of the water dispenser allowed him to "pinpoint the exact origin of the fire as being the hot water heater components of the water dispenser". (Plaintiffs' Objection, p. 2) Seeking support for this baseless assertion, Plaintiffs' counsel directs the Court to Page 1 of Mr. Davoodi's written report. (p.1, Exhibit C of Defendants' SMF) Plaintiffs' counsel appears to be referring to the first paragraph of the Subsection designated as "ORIGIN AND CAUSE SUMMARY". While Mr. Davoodi opted to include a Subsection entitled "ORIGIN AND CAUSE SUMMARY" in his written report, during the course of his deposition testimony he repeatedly testified that he would not be rendering any opinions regarding the cause of the Carvalhal fire. (Defendants' 3rd Supp. SMF, p. 2, para. 3). While Mr. Davoodi's subsequent testimony seems to suggest that he believes the assertions in the subject portion of his written report to be true, he also acknowledged that he performed no testing or analysis to develop any reliable facts that would serve as an adequate foundation for any opinions as to what allegedly caused the ignition of the fire within the Carvalhals' water dispenser unit. (Defendants' 3rd Supp. SMF, p. 2, para. 3).

Plaintiffs' characterization of the Defendants' reliance upon NFPA 921 is also incorrect. Defendants are not arguing that Mr. Davoodi's failure to follow the dictates of NFPA 921 requires that this Court bar his opinions *per se*, but rather that Mr. Davoodi's variance from NFPA 921 simply illustrates the haphazard and unscientific manner in which he performed his investigation of the origin of the Carvalhal fire. Thus, Plaintiffs' observation that NFPA 921 itself declares that it is not a standard for the performance of fire investigations misses the point. As Plaintiffs' Objection acknowledges, for Mr. Davoodi's opinions to be admissible in this case,

both Rule 702 and *Daubert* require the Plaintiffs to show that his conclusions were arrived at in a scientifically sound and methodologically reliable fashion. Mr. Davoodi's testimony establishes that he acknowledges that NFPA 921 sets forth the type of methodology generally accepted in his field of expertise. (Defendants" Motion, pages 3-4) Consequently, NFPA 921 is a reliable yardstick by which this Court can evaluate the scientific reliability of his conclusions in this case.

While the Plaintiffs take Defendants to task for claiming that "Mr. Davoodi took no measurements of the Carvalhal kitchen" and that such an assertion amounts to a "blatant misrepresentation", their protest (once again) seems to miss the point. (Plaintiffs' Objection, p. 10) Although Mr. Davoodi testified that he did take measurements of the Carvalhal kitchen during his on-site visit, he could not recall the specific results of said measurements and failed to document that information anywhere in his subsequent report or investigation file. *Id.* The significance of Mr. Davoodi's failings in this regard do not relate to the act of taking measurements, but rather the omission of documenting the results of said measurement activities in any way, shape or form. By failing to memorialize the results of his supposed measurements, Mr. Davoodi failed to collect reliable evidence which might have otherwise supported his opinions in this case.

In the absence of any documented measurements of the Carvalhal kitchen, Mr. Davoodi is unable to explain how those specific measurements serve to support his conclusions. Just as importantly, his failure denied the Defendants an opportunity to conduct their own testing of his analysis in this case. Mr. Davoodi's failure to "take" any documentation of his empirical measurements from the Carvalhal fire scene with him after he left on March 3, 2004, casts a cloud over the validity of other aspects of his analysis and conclusions in this case. Most notably, because he failed to retain any documentation of the measurements he supposedly took

during his inspection of the Carvalhal kitchen, Mr. Davoodi was unable to incorporate that information into the computer generated diagrams which he now claims depicts the fire pathways. (Defendants' SMF, page 5, para. 9) Furthermore, his inability to recall the measurements completely precludes others from attempting to replicate and thereby test his methodology. Likewise, Plaintiffs' claims that Mr. Davoodi's act of taking, but not documenting the measurements of certain areas of the Carvalhal kitchen, including the adjacent countertop, should be construed as satisfying the separate and distinct requirements of NFPA 921 that the location of an appliance suspected to be a cause of a fire be established through the use of measurements. For the reasons noted above, this assertion misses the point of "taking" measurements for scientific purposes and must be rejected in this context.

In the end, the Plaintiffs' Objection cannot change the undisputed facts in this case. First, Mr. Davoodi's written report documenting his investigation of this fire contains no measurements whatsoever of the interior of the Carvalhals' kitchen, or its contents. (Defendants' SMF Ex. C). While it was Mr. Davoodi's "general habit" to take such measurements, and he believed that he measured the dimensions of the Carvalhal's kitchen, he did not recall those dimensions, and could not provide them during his deposition. (Defendants' 3rd Supp. SMF, p. 2, para. 4). While Mr. Davoodi was able to provide an estimate of the height of the ceilings in the Carvalhals' kitchen, he acknowledged that the information was just an estimate, and he does not recall creating any written documentation confirming the actual measurement (Defendants' 3rd Supp. SMF, p. 2-3, para. 4). Ultimately, the only dimension that Mr. Davoodi was able to recall taking with any certainty was measuring the width and the length of the Carvalhals' kitchen, and he acknowledged that he no longer possesses that information. (Defendants' 3rd Supp. SMF, p. 3, para. 4). This is true despite the fact that when asked whether he would write

down the dimensions of a room if he had measured it, he responded that "generally I would". (Defendants' 3rd Supp. SMF, p. 3, para. 4).

Strangely enough, Mr. Davoodi's own testimony illustrates how the Plaintiffs want to have it both ways. He testified that NFPA 921 only required an investigator to take measurements if such measurements would help that investigator reach a conclusion. (Defendants' 3rd Supp. SMF, p. 3, para. 4). Mr. Davoodi went on to state that, based on the specifics of any particular case, if taking measurements would not "make any difference, no, you shouldn't do it". *Id.* Inasmuch as Mr. Davoodi has vague recollections about taking at least some measurements in the Carvalhals' kitchen, clearly the act of taking such measurements reflects his belief (at least at the time) that the subject dimensions were relevant to his evaluation of this fire. Now, when this Court is called upon to evaluate the reliability of his conclusions, the measurement data is unavailable. If one embraces the arguments set forth in the Plaintiffs' Objection, one must necessarily conclude that NFPA 921's guidelines regarding taking empirical measurements at a fire scene is satisfied by merely taking measurements and not documenting them. This contention is absurd, and overlooks the important role that empirical evidence plays in the application of the scientific method to reach reliable conclusions, and the ability to test these conclusions through replication.

In an attempt to blunt Defendants' criticism of Mr. Davoodi's failure to abide by the NFPA 921 guidelines for the investigation of appliance fires, Plaintiffs' Objection goes so far as to claim that he knew nothing about the potential cause of a fire. (Plaintiffs' Objection, p. 12) This assertion is clearly contradicted by the undisputed facts in this case. More specifically, Mr. Davoodi's own report states that he interviewed Alberto Carvalhal at the scene of the fire on March 3, 2004. (Defendants' 3rd Supp. SMF, p. 1, para. 1). Mr. Davoodi's report documents

that he had a detailed conversation with Mr. Carvalhal regarding the water dispenser, including when it was initially purchased, whether the Carvalhals had experienced any problems with it, and that the water bottle used on the unit was not the original bottle, but one fitted with a filter. *Id.* Mr. Davoodi's on-site interview of Mr. Carvalhal clearly establishes that he was well aware that there had been a water dispenser in the Carvalhals' kitchen. The detailed nature of Mr. Davoodi's inquiry about the specifics of the water dispenser establishes his contemporaneous awareness that the unit was considered a potential origin of the fire on the day he performed his on-site inspection of the Carvalhals' kitchen. Consequently, Mr. Davoodi was obliged to follow the NFPA 921 guidelines for the collection of reliable evidence to establish the location of the water dispenser as part of his fire origin investigation. While Plaintiffs' counsel goes on to claim that Mr. Davoodi satisfied this requirement by taking various measurements in the kitchen, as noted above, none of these supposed measurements were documented, and thus is not competent evidence to support his conclusions in this regard, as they are not available for purposes of testing or cross-examination.

Mr. Davoodi's inability to recall the measurements that he allegedly took during his on-site investigation at the Carvalhal household on March 3, 2004, further demonstrates the significance of his failure to prepare appropriate diagrams to document said investigation. As noted on Page 11 of Plaintiffs' Objection, NFPA 921, §15.4 states that various techniques may be used to prepare drawings, **that they are intended to be used to support the investigator's memory, and that it is the investigator's decision** as to the level of detail included in the drawings. (Emphasis added.) Clearly, Mr. Davoodi's inability to recall the measurements he allegedly took during his investigation of this fire emphasizes how his related failure to prepare proper diagrams of the fire scene (as required by the subject guidelines) has denied him

sufficient reliable facts from which to draw any scientific conclusions regarding the origin of the Carvalhal fire.

In a feeble response to Defendants' criticism of Mr. Davoodi's failure to follow NFPA 921's guidelines regarding the collection of physical evidence from the Carvalhal fire scene, Plaintiffs' counsel is forced to twist Mr. Davoodi's deposition testimony beyond all recognition. For example, Plaintiffs' Objection claims that "Mr. Davoodi testified that not only was the coffee pot not present at the time of his inspection, but that it would not have been in his area of origin anyways. (*sic*)" (Plaintiffs' Objection, p.13-14) While it is true that Mr. Davoodi testified that there was no coffeemaker present in the Carvalhal kitchen at the time of his inspection, his own written report contradicts that assertion. (p. 9, Exhibit C of Defendants' SMF). More specifically, Mr. Davoodi's report states that "the electrical appliances that could be readily identified in the kitchen were a **coffeemaker**, microwave, toaster oven and a mixer". *Id.* (emphasis added) Significantly, Mr. Davoodi's report goes on to state that "the above-mentioned appliances were not in the area of origin and were not energized. However, **all of these items were examined and eliminated** as a potential ignition source for this fire". *Id.* (emphasis added).

Mr. Davoodi's report clearly establishes that the coffeemaker was present at the Carvalhal kitchen on the day of his on-site investigation. What became of the coffeemaker remains a mystery. During his deposition, Mr. Davoodi did not remember one way or the other as to whether he retained the coffeemaker as evidence in this case. (Defendants' 3rd Supp. SMF, p. 3, para. 5). Mr. Davoodi's report clearly establishes that he took time and evaluated the coffeemaker as a potential source of ignition in this case, notwithstanding his testimony is regarding its proximity to what he believes to be the origin point of the fire. Strangely enough,

while Mr. Davoodi's report states that **both** the coffeemaker and the mixer were "not in the area of origin and were not energized." and that **both** of "these items were examined and eliminated as a potential ignition source for this fire" (p. 9, Exhibit C of Defendants' SMF), Mr. Davoodi decided to only retain the mixer as evidence. This is true despite the fact that he agreed that NFPA 921 states that it is important to retain, preserve and protect evidence from a fire scene that may enable someone else to further evaluate the cause and origin of a fire. (Defendants' 3rd Supp. SMF, p. 3, para. 5). Once again, NFPA 921 sets forth a widely accepted protocol for evidence collection aimed at enabling fire investigators to establish reliable facts that support their ultimate conclusions. Mr. Davoodi's failure to retain the coffee maker (and the other appliances he supposedly evaluated at the fire scene and apparently ruled out as the origin of this fire) is contrary to NFPA 921, denied the Defendants' experts an opportunity to perform their own testing of same, and is indicative the Plaintiffs' experts' failure to develop the reliable facts and evidence required to reach scientifically sound conclusions.

### B. <u>Ara Nalbandian's and Michael Cooney's Opinions are Not Scientifically Reliable</u>

The Defendants' criticisms of Mr. Nalbandian's and Mr. Cooney's flawed investigation of the underlying cause of the Carvalhal fire scene are well founded, and require that they be barred as expert witnesses. In contrast, the arguments set forth in the Plaintiffs' Objection are unsubstantiated and rely upon dubious logic. Because Plaintiffs cannot fulfill their burden of proof to show that a defect in the water dispenser was the proximate cause of the Carvalhal fire by way of reliable, scientifically sound expert witness testimony, the Defendants are entitled to judgment as a matter of law.

As noted above, neither Mr. Nalbandian nor Mr. Cooney are competent to render expert opinions in this matter. Their underlying lack of qualifications is reflected in the unscientific

methodology they employed to evaluate the water dispenser at issue in this case. Despite his lack of expertise dealing with electrical devices, Mr. Cooney initially went on to testify that his background in metallurgy served as a basis for his opinion that the temperature sensors in the Carvalhal water dispenser malfunctioned. (Defendants' 3rd Supp. SMF, page 4, Para. 9) That being said, Mr. Cooney acknowledged that he did not perform any testing or other empirical analysis which would enable him to opine that the products of the corrosion at issue in this case caused the temperature sensors to fail. (Defendants' 3rd Supp. SMF, page 5, Para. 9) Likewise, he admitted that they identified no evidence indicating that the temperature sensors malfunctioned electronically. (Defendants' 3rd Supp. SMF, page 5, Para. 9) When pressed on the issue of what the basis was for their claim that the temperature sensors had malfunctioned in any way, shape or form, Mr. Cooney quickly claimed that the testing of such components was impossible due to the fire damage to the subject unit. *Id.*

Following Mr. Cooney's lead, Plaintiffs now attempt to salvage their causation experts in this case by claiming that the damage done to the water dispenser in the Carvalhals' kitchen precluded them from conducting testing aimed at developing reliable evidence to support their causation theory in this case. Based upon the available facts, this self-serving claim must be rejected. First, while Mr. Nalbandian and Mr. Cooney may now claim that the Carvalhal water dispenser was too damaged to be subjected to testing, no one at Theilsch Engineering ever attempted to test the key components in the Carvalhal water dispenser. (Defendants' 3rd Supp. SMF, page 5, Para. 10) Second, even if Mr. Nalbandian and Mr. Cooney had determined that the components of the Carvalhal water dispenser were too damaged to be evaluated, Theilsch Engineering had access to not one, but <u>two</u> exemplar water dispenser units that they could have tested in an effort to develop admissible facts to establish the reliability of their conclusions in

this matter. More specifically, Mr. Cooney confirmed that Mr. Davoodi brought two separate exemplar units to Theilsch Engineering's laboratories for evaluation. (Defendants' 3rd Supp. SMF, page 5, Para. 10) While the both exemplar units could have been subjected to testing to verify their theories in this case, no such testing was performed at Theilsch Engineering. (Defendants' 3rd Supp. SMF, page 5, Para. 10) The explanation for this abject failure ? - that Plaintiffs' counsel did not request that such testing of the exemplars be performed, and budgetary concerns. (Defendants' 3rd Supp. SMF, page 5, Para. 10) While Plaintiffs' counsel may have the audacity to claim that the burn pattern evidence alone make the fuel and energy sources which caused the Carvalhal fire "obvious" (Plaintiffs' Objection, Page 19), these essential elements of the Plaintiffs' case are not "obvious" to the Defendants, and will not be "obvious" to lay people called upon to serve as jurors in this case. This is the precise reason the Plaintiffs are obliged to provide competent, reliable, scientifically based opinion testimony to explain the cause and origin of this fire. Because Plaintiffs are unable to provide this required evidence, the Defendants are entitled to judgment as a matter of law.

## IV. IN THE ABSENCE OF ADMISSIBLE OPINION TESTIMONY FROM PLAINTIFFS' EXPERTS, DEFENDANTS' MOTION MUST BE GRANTED

Defendants do not deny that Hossein Davoodi performed an investigation of the Carvalhal fire scene. However, because Mr. Davoodi failed to conduct his investigation in a scientifically sound manner, he failed to develop sufficient facts or data to enable him to render scientifically based opinions in this case. Both Mr. Davoodi's report and his deposition testimony show that there was an abundance of evidence available to him, but he simply failed to collect same in accordance with NFPA 921, other generally accepted fire investigation principles, and (most importantly) the scientific method. In the absence of sufficient reliable

facts or data, Mr. Davoodi is unable to render scientifically sound opinions regarding the origin of the Carvalhal fire and therefore, Defendants are entitled to judgment as a matter of law.

Because the Plaintiffs' other experts necessarily rely upon Mr. Davoodi's scientifically flawed work, if the Court bars his testimony, it need not address the admissibility of Mr. Nalbandian and Mr. Cooney's testimony. Assuming, *arguendo*, that Mr. Davoodi's opinions are admissible, Plaintiffs' other experts still lack a sufficient scientific basis for rendering opinions in this case. Defendants do not deny that Mr. Nalbandian and Mr. Cooney performed some testing in this case. At best, Plaintiffs' causation experts might be able to establish that chloride contained in the water dispenser's insulation combined with water present in the unit and permitted the hot water tank to corrode. Based on that very limited analysis, a jury might be allowed to infer that water leaked from the hot water tank. However, even if one assumes that the evidence would support that inference, the Plaintiffs still have failed to satisfy their burden of proof of developing scientifically sound evidence that would permit a jury to conclude that a defect present in the water dispenser caused the Carvalhal fire to occur. While Mr. Nalbandian and Mr. Cooney may offer competent testimony that the Defendants' water dispenser was defective in that its design permitted corrosion to occur, and a resultant leak caused water damage to the Plaintiffs' home, this case is about a fire - not a flood. Plaintiffs' counsel is asking the Court to allow a jury to use a bridge of speculation using what amounts to "junk science" to close a gap in the causal chain left by its cause and origin experts. Rule 702 and *Daubert* do not permit litigants to use unreliable expert testimony to enable a jury to engage in such speculation.

Plaintiffs' suggestion that applicable case law authorizes just such an exercise in speculation is unfounded. Notably, Plaintiffs' counsel has misinterpreted the ruling in the *Thomas* case. The evidence proffered by the Plaintiffs in this matter is just as questionable as the

evidence proffered by the plaintiff in the *Thomas* case. Consequently, this Honorable Court should reach a similar conclusion. Although courts permit juries to infer certain facts based upon reliable circumstantial evidence and competent expert opinions regarding generally accepted principals of science, this practice does not throw wide open the courthouse doors to the submission of dubious circumstantial evidence without the backing of science so that a jury may engage in mere speculation. *Thomas v. Amway Corp.*, 488 A.2d 716, 722 (R.I. 1985).

While it is true that probative circumstantial evidence may create inferences of fact not otherwise subject to direct proof (*Thomas,* Id., emphasis added), the disputed evidence in this case does not meet this test. To the contrary, the Defendants in this instance are seeking to bar expert testimony which is based upon non-probative circumstantial evidence where the allegedly defective condition of a product was subject to direct proof, but was not proven directly because the Plaintiffs' experts failed to perform scientifically sound testing. In summary, because the Plaintiffs in the case at bar have failed to establish that a defect existed and that the alleged defect was the proximate cause of the Plaintiffs' injury, Defendants are entitled to judgment as a matter of law.

WHEREFORE, Defendants, MIDEA USA, INC. and GENERAL ELECTRIC request that this Court grant Summary Judgment in their favor on all Counts in the Plaintiffs' respective Complaints, and that the Defendants be awarded their costs.

Dated: July 2, 2007

/s/ Rodd E. Elges, Esq.
DOMINICK W. SAVAIANO
RODD E. ELGES
CLAUSEN MILLER P.C.
Firm I.D. No. 90181
10 South LaSalle Street
Chicago, Illinois 60603-1098
312/855-1010

AND

/s/ Joseph-Anthony DiMaio, Esq.
Joseph-Anthony DiMaio, Esq.
Attorney #3910
McKinnon & Harwood
1168 Newport Avenue
Pawtucket RI 02861
(401) 723-9655
contact@mckinnonharwood.com

dsavaiano@clausen.com
relges@clausen.com
Attorneys for Defendants

**CERTIFICATE OF MAILING AND ELECTRONIC SERVICE**

I hereby certify that a true and correct copy of the above and foregoing was mailed to the following attorney(s) of record with sufficient postage thereon, on the 2nd day of July, 2007. I hereby further certify that a true and correct copy of the above and foregoing was transmitted electronically to the following attorney(s) of record, on the 2nd day of July, 2007.

Mark Dana, Esq.
Robert A. D'Amico, II, Esq.
536 Atwells Ave., Suite 1
Providence, RI 02909
401.454.1212
Fax: 401.454.4809
rad@dblawri.com
mwd@mdlawri.com

Richard Ari Van Tienhoven, Esq.
Van Tienhoven & Cotter, Ltd.
312 South Main Street
Providence, Rhode Island 02903;
ravt.ksc@conversent.net

Erik Loftus
Law Office of Stuart Blackburn
Two Concorde Way, PO Box 608
Windsor Locks, CT 06096
860.292.1116
eloftus@sbcglobal.net

Joseph-Anthony DiMaio
McKinnon & Harwood
1168 Newport Avenue
Pawtucket, Rhode Island 02861
(401) 723-9655
Fax: (401) 722-9106
contact@mckinnonharwood.com

/s/ Rodd E. Elges, Esq.
Rodd E. Elges
CLAUSEN MILLER P.C.
10 S. LaSalle St.
Chicago, Illinois 60603
Phone: (312) 855-1010