IN THE UNITED STATES DISTRICT COURT
FOR RHODE ISLAND

| | | |
|---|---|---|
| THE HARTFORD INSURANCE COMPANY, as Subrogee of ALBERTO CARVALHAL<br><br>Plaintiff<br><br>v.<br><br>GENERAL ELECTRIC COMPANY and MIDEA USA, INC.<br><br>Defendant | ) | No. CA 06 362 S |
| EUGENIA CARVALHAL<br><br>Plaintiff<br><br>v.<br><br>GENERAL ELECTRIC COMPANY and MIDEA USA, INC.<br><br>Defendant | ) | No. CA 07 007 S |

**DEFENDANTS' THIRD SUPPLEMENTAL STATEMENT OF MATERIAL FACTS IN SUPPORT OF DEFENDANTS' MOTION TO PRECLUDE THE TESTIMONY OF THE PLAINTIFFS' EXPERT WITNESSES AND FOR SUMMARY JUDGMENT**

NOW COME the Defendants, MIDEA USA, INC. and GENERAL ELECTRIC COMPANY, by and through their attorneys, and hereby submits their Third Supplemental Statement of Material Facts as to which there is no genuine issue to be tried.

1. Mr. Davoodi's written report documenting his investigation of this fire contains no measurements of the interior of the Carvalhal's kitchen, or its contents. (Defendants' SMF Ex. C). Mr. Davoodi's report states that he interviewed Alberto Carvalhal at the scene of the fire on March 3, 2004. (p. 5 of Exhibit C of Defendants' SMF) His report documents a conversation with Mr. Carvalhal regarding the water dispenser, including when it was initially purchased,

whether the Carvalhals had experienced any problems with it, and that the water bottle used on the unit was not the original bottle, but one fitted with a filter. *Id.* Mr. Davoodi's report states that "the electrical appliances that could be readily identified in the kitchen were a coffeemaker, microwave, toaster oven and a mixer". (p. 9, Exhibit C of Defendants' SMF) The report states that "the above-mentioned appliances were not in the area of origin and were not energized. However, all of these items were examined and eliminated as a potential ignition source for this fire." *Id.*.

2. During his deposition, Mr. Davoodi stated that he lacks adequate expertise to opine on what "caused" the ignition of this fire, and that his testimony is only offered to place the "origin" of the fire within the water dispenser located in the Carvalhal's kitchen on the day of this incident. (See Exhibit A, a true and accurate copy of portions of Hossein Davoodi's deposition transcript at page 80) The Carvalhal incident was the first and only fire that Mr. Davoodi has investigated in which a water dispenser was involved. (Exhibit A at page 42). Mr. Davoodi has never been involved with the design or manufacture of a water dispenser or any other consumer product. (Exhibit A at 74)

3. During his deposition, Mr. Davoodi testified that he would not be rendering any opinions regarding the cause of the Carvalhal fire. (Exhibit A at pages 40, 41, 98) He also stated that he performed no testing or analysis to develop any reliable facts that would serve as an adequate foundation for any opinions as to what allegedly caused the ignition of the fire within the Carvalhal's water dispenser unit. (Exhibit A at pages 106-113)

4. Mr. Davoodi testified that it was his "general habit" to take measurements, that he believed that he measured the dimensions of the Carvalhal's kitchen, that he did not recall those dimensions, and could not provide them during his deposition. (Exhibit A at pages 118-119). Mr.

Davoodi was able to provide an estimate of the height of the ceilings in the Carvalhal's kitchen. (Exhibit A at page 120) He does not recall creating any written documentation confirming the actual measurement. *Id.* Mr. Davoodi recalled measuring the width and the length of the Carvalhal's kitchen, and he no longer possesses that information. (Exhibit A at page 121) He testified that "generally I would" keep such information. (Exhibit A at page 119) Mr. Davoodi's testified that NFPA 921 only requires an investigator to take measurements if such measurements would help that investigator reach a conclusion. (Exhibit A at pages 192-193). He also stated that based on the specifics of any particular case, if taking measurements would not "make any difference, no, you shouldn't do it". *Id.*

5. Mr. Davoodi testified that he did not remember one way or the other as to whether he retained the coffeemaker as evidence in this case. (Exhibit A at page 139) He agreed that NFPA 921 states that it is important to retain, preserve and protect evidence from a fire scene that may enable someone else to further evaluate the cause and origin of a fire. (Exhibit A at page 143)

6. During his deposition, Mr. Nalbandian testified that the water heaters he designed were powered using natural gas or oil, and that he has never worked on the design of an electric water heater. (See Exhibit B, a true and accurate copy of portions of Ara Nalbandian's deposition transcript at page 27) Mr. Nalbandian is not an electrical engineer. (Exhibit B at page 13) He has never been involved in the design of a water dispenser. (Exhibit B at page 25) Mr. Nalbandian has never worked as a consultant for any manufacturers of an electrical appliance. (Exhibit B at page 37) He has never investigated a residential fire involving a water dispenser similar to the one in the Carvalhal case. (Exhibit B at page 41)

7. During Mr. Cooney's deposition, he stated that the prior fire involving a water dispenser he investigated involved the failure of a water dispensing mechanism. (See Exhibit C, a true and accurate copy of portions of Michael Cooney's deposition transcript at page 12) He could not recall the specific details of that prior investigation. *Id.* During his prior investigation of the other water dispenser fire, Mr. Cooney had access to, and performed testing on an exemplar, prior to reaching his opinions in that case. (Exhibit C at page 15) Mr. Cooney is not an expert regarding electrical systems incorporated into consumer products such as the Carvalhal water dispenser. (Exhibit C at page 22) The fire involving the other water dispenser investigated by Mr. Cooney occurred in a commercial setting. (Exhibit C at page 19) The Carvalhal case was the first time that he has been involved in the investigation of a residential fire. *Id.* None of Mr. Cooney's formal education was in the area of fire cause and origin investigations. (Exhibit C at page 26) He has never taken any seminar, classes or received any certifications as a fire cause and origin investigator. *Id.* Mr. Cooney has never worked for a fire department, State Fire Marshall's Office, or any other entity responsible for conducting a cause and origin investigation. *Id.*

8. Mr. Cooney stated that he is not an expert in product design or product manufacturing. (Exhibit C at page 34) He is not an expert in the evaluation of heat sensing switches. *Id.* Mr. Cooney stated that he would not be offering any opinions regarding those issues as it pertains to the Carvalhal case. *Id.* Mr. Cooney testified that that the thermal sensors are electrical devices. (Exhibit C at page 144) He stated that he does not have expertise regarding electrical devices. *Id.*

9. Mr. Cooney testified that his background in metallurgy served as a basis for his opinion that the temperature sensors in the Carvalhal water dispenser malfunctioned. (Exhibit C

at pages 144-145) He did not perform any testing or other empirical analysis which would enable him to opine that the products of the corrosion at issue in this case caused the temperature sensors to fail. (Exhibit C at pages 145-147) He testified that he identified no evidence indicating that the temperature sensors malfunctioned electronically. (Exhibit C at page 147) Mr. Cooney stated that testing of certain components in the Carvalhal water dispenser was impossible due to the fire damage. *Id.*

10. Theilsch Engineering never attempted to test the components in the Carvalhal water dispenser. (Exhibit C at pages 143, 147, 153) Mr. Cooney testified that Mr. Davoodi brought two separate exemplar units to Theilsch Engineering's laboratories for evaluation (Exhibit C at pages 53, 54, 55). No testing was performed on the two exemplars by Theilsch Engineering (Exhibit C at pages 55, 56, 57) due to budgetary concerns (Exhibit C at pages153 and 154).

Dated: July 2, 2007

/s/ Rodd E. Elges, Esq.
DOMINICK W. SAVAIANO
RODD E. ELGES
CLAUSEN MILLER P.C.
Firm I.D. No. 90181
10 South LaSalle Street
Chicago, Illinois 60603-1098
312/855-1010
dsavaiano@clausen.com
relges@clausen.com
Attorneys for Defendants

AND

/s/ Joseph-Anthony DiMaio, Esq.
Joseph-Anthony DiMaio, Esq.
Attorney #3910
McKinnon & Harwood
1168 Newport Avenue
Pawtucket RI 02861
(401) 723-9655
contact@mckinnonharwood.com

**CERTIFICATE OF MAILING AND ELECTRONIC SERVICE**

I hereby certify that a true and correct copy of the above and foregoing was mailed to the following attorney(s) of record with sufficient postage thereon, on the 18th day of June, 2007. I hereby further certify that a true and correct copy of the above and foregoing was transmitted electronically to the following attorney(s) of record, on the 2nd day of July, 2007.

Mark Dana, Esq.
Robert A. D'Amico, II, Esq.
536 Atwells Ave., Suite 1
Providence, RI 02909
401.454.1212
Fax: 401.454.4809
rad@dblawri.com
mwd@mdlawri.com

Richard Ari Van Tienhoven, Esq.
Van Tienhoven & Cotter, Ltd.
312 South Main Street
Providence, Rhode Island 02903;
ravt.ksc@conversent.net

Erik Loftus
Law Office of Stuart Blackburn
Two Concorde Way, PO Box 608
Windsor Locks, CT 06096
860.292.1116
eloftus@sbcglobal.net

Joseph-Anthony DiMaio
McKinnon & Harwood
1168 Newport Avenue
Pawtucket, Rhode Island 02861
(401) 723-9655
Fax: (401) 722-9106
contact@mckinnonharwood.com

/s/ Rodd E. Elges, Esq.
Rodd E. Elges
CLAUSEN MILLER P.C.
10 S. LaSalle St.
Chicago, Illinois 60603
Phone: (312) 855-1010