# EXHIBIT D

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| THE HARTFORD INSURANCE COMPANY, As Subrogee of Alberto and Eugenia Carvalhal | : | |
| v. | : | C.A. No.: 06-362S |
| GENERAL ELECTRIC COMPANY and MIDEA USA, INC. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF HARTFORD INSURANCE COMPANY'S OBJECTION TO MAGISTRATE JUDGE ALMOND'S REPORT AND RECOMMENDATION ON THE DEFENDANTS' MOTION TO PRECLUDE THE PLAINTIFF'S EXPERTS AND FOR SUMMARY JUDGMENT**

NOW COMES the Plaintiff, The Hartford Insurance Company, by and through its attorneys, and submits this Memorandum of Law in Support of its Objection to Magistrate Judge Almond's Report and Recommendation on the Defendants' Motion to Preclude its Expert Witness and for Summary Judgment.

Specifically, the Plaintiff objects to two determinations made by Magistrate Judge Almond in his Report and Recommendation. The first determination objected to by the Plaintiff is that its primary causation experts, Michael Cooney and Ara Nalbandian, should be precluded from testifying due to "unsupported speculation" contained in their opinions. The second is that Summary Judgment should enter in favor of the Defendant.

In support of its objection, the Plaintiff adopts its previously filed Objection to Defendants' Motion to Preclude Plaintiff's Experts and for Summary Judgment, together

with its accompanying memorandum of law.[1] Beyond the arguments and analysis set forth in those documents, the Plaintiff further states, in support of its objection, the following:

## A. PROCEDURAL HISTORY

On June 8, 2007, the Defendants filed their Motion to Preclude Plaintiff's Experts and for Summary Judgment. The Plaintiff's response was filed on June 22, 2007. After some initial scheduling difficulties, argument on the motion was set for September 14, 2007 in front of Magistrate Judge Almond. The Court's clerk informed the Plaintiff that Judge Almond would not be allowing expert testimony at that hearing. On October 2, 2007, Magistrate Judge Almond filed his Report and Recommendation in which he recommended preclusion of the Plaintiff's causation experts, Ara Nalbandian and Michael Cooney, and recommended that summary judgment should enter in favor of the Defendants. This objection followed.

## B. ANALYSIS

Magistrate Judge Almond determined that Mr. Nalbandian and Mr. Cooney did not "provide a scientific basis for the heat sensor causation theory, and the theory did not withstand scrutiny when examined at their depositions. It is no more than unsupported speculation, and is thus inadmissible." As a result, Magistrate Judge Almond decided that the experts should be precluded and the Defendants' Motion for Summary Judgment granted.

---

[1] Although these documents are submitted by reference only, they contain the factual scenario of the loss as well as applicable law and arguments for the admissibility of the Plaintiff's experts.

The aforementioned findings were made in the absence of testimony from either Mr. Nalbandian or Mr. Cooney. Indeed, the Court's clerk informed undersigned counsel that no testimony would be permitted at the hearing of this matter. As such, Magistrate Judge Almond's decision was based purely on the experts' report, the Defendants' brief which contained numerous factual inaccuracies, and snippets of the experts' depositions crafted by the Defendants. It is the Plaintiff's contention that Magistrate Judge Almond improperly ignored key statements from the Plaintiff's experts made in their depositions which articulated the opinions contained in their report. In addition, Magistrate Judge Almond disallowed the Plaintiff from presenting the full spectrum of its experts' opinions through testimony at an evidentiary hearing. Inasmuch, the Plaintiff requests a reversal of Magistrate Judge Almond's recommendation either outright, or, in the alternative, reversal with an order for an evidentiary hearing with expert testimony.

## I. Magistrate Judge Almond failed to properly consider articulations of the Plaintiff's experts' report made during their depositions.

As noted by Magistrate Judge Almond, Michael Cooney, a metallurgical engineer, and Ara Nalbandian, a mechanical engineer, determined that the water dispenser at issue contained a manufacturing defect which caused this fire. The insulation used by the manufacturer contained a high level of chlorides which caused deterioration and cracking to develop in the hot water tank which caused water leakage and corrosion. Neither the Defendants nor Magistrate Judge Almond take issue with this portion of their opinions. In their report, Mr. Cooney and Mr. Nalbadian take the opinion further to state that the heat sensors affixed to the water tank were not allowed to properly operate due to the water and corrosion, and the heating element within the tank was allowed to run

constantly to the point of overheating and ignition of flammable materials. See Exhibit A, Thielsch report.

However, downplayed by Magistrate Judge Almond is the fact that Mr. Nalbandian and Mr. Cooney expanded upon this opinion at their depositions and acknowledged that due to the destruction caused by the fire, they cannot precisely state that the heater coil was the ignition source of the fire (though it was the most probable source), but burn patterns dictate that it was some component of the heating subsystem within the water dispenser, which included the insulated wires, wire connections and thermal switches. See Exhibit B, Nalbandian deposition p.126-127, 136, 146, 176; Exhibit C, Cooney deposition, p.100-107. Despite the electrical system being the ignition source, it is not their opinion that the electrical system was defectively designed. Rather, it is their opinion that the design defect of placing a high chloride content insulation against the stainless steel tank caused the tank to crack and corrode allowing water and corrosion to escape and come into contact with the electrical heating subsystem which caused the same to malfunction and overheat igniting plastic within the water dispenser. Exhibit B, p.124; Exhibit C, p.195-196.

Magistrate Judge Almond does not specifically address this articulation of their opinions, but rather focuses solely on the opinion contained in their report and that delivered in the Plaintiff's expert disclosure that the heat sensors malfunctioned. This reliance was based presumably on Magistrate Judge Almond's citation to *Dunkin' Donuts Inc. v. Patel*, 174 F.Supp.2d 202, 211 (D.N.J. 2001) and the quote "The test of a report is whether it is sufficiently complete, detailed and in compliance with the Rules so that

surprise is eliminated, unnecessary depositions are avoided, and costs reduced." However, this position is overly harsh as any expert, upon further review of the materials, will likely have tweaks in his opinion not likely discussed in his original report. "Testimony of an expert on matters within the expert's expertise but outside of the expert's report is not only permissible at trial, but the exclusion of such testimony at trial may be reversible error. *DeMarines v. KLM Royal Dutch Airlines*, 580 F.2d 1193 (3rd Cir. 1978; *Kelly v. GAF Corp.*, 115 F.R.D. 257, 258 (E.D.Pa. 1987). There is no rule of law or statute which prohibits an expert from testifying beyond the scope of his report. *Kelly*, 115 F.R.D. at 258. Fed.R.Civ.Pro. 26(b)(4) provides the exclusive method for discovering an expert's testimony, but it does not state that an expert report is the only method of discovery nor does it state that such a report restricts the expert's testimony at trial. *Id.* In the art or science that the expert is qualified to express an opinion, there is no rule which requires that the expert confine his testimony to his report. *McElroy v. Cessna Aircraft Co.*, 506 F.Supp. 1211, 1216 (W.D.Pa. 1981). . . . An expert may testify beyond the scope of his report absent surprise or bad faith. . *Kelly*, 115 F.R.D. at 258, *McElroy*, 506 F.Supp. at 1216." *Fritz v. Consolidated Rail Corp.*, 1992 WL 96285 (E.D.Pa. 1992), attached hereto as Exhibit D. There is no bad faith as the Defendants had the opportunity to explore the intricacies and articulations of the opinions expressed by Mr. Cooney and Mr. Nalbadian during their respective depositions, such articulations being made after review of materials disclosed in discovery, deposition testimony and further reflection on the evidence. Unfortunately for the Court and the Plaintiff, the experts were not given the same opportunity for articulation by Magistrate Judge Almond.

Case 1:06-cv-00362-S-LDA Document 57-2 Filed 10/10/2007 Page 6 of 12

Assuming that Magistrate Judge Almond's inflexible reliance on the Plaintiff's experts' report was not proper, an analysis of the articulated opinions is in order. It is true that neither Mr. Nalbandian nor Mr. Cooney is an electrical expert. However, the electrical component of their opinion relates only to ignition of the fire, and has little to do with the manufacturing defect they discovered. Still, the Defendants contend, and Magistrate Judge Almond appears to agree, that this is the most essential portion of their opinion. Unfortunately, the Plaintiff's experts were not given a proper forum in which to respond to the Defendants and Magistrate Judge Almond's concerns. Indeed, had they been give such an opportunity, they may have cited to fundamental electrical concepts such as the fact that arcing is one of the main ways in which electrical insulation, or combustibles in close proximity electrical components, can be ignited. See Exhibit E, pg. 2. Or, that one of the primary causes of arcing is the carbonization of insulation which may occur when *surface moisture* and corrosion cause leakage currents across the surface of the electrical insulation. Exhibit E, pg. 3. It should be noted that undersigned counsel never requested Magistrate Judge Almond to take judicial notice that electrical components will short and cause fires everytime they are exposed to corrosion and water; rather, that it is basic engineering principle that it can and does occur.

In sum, the evidence clearly shows that the hot water tank was cracked and leaking onto the electrical components associated with the hot water heating subsystem. This has not been contested by the Defendants. Further, the Plaintiff's fire origin expert Hossein Davoodi places the origin of the fire directly within the heating subsystem of the water dispenser based on burn patterns within the appliance. Mr. Davoodi's testimony was

Case 1:06-cv-00362-S-LDA Document 57-2 Filed 10/10/2007 Page 7 of 12

deemed admissible by Magistrate Judge Almond. Mr. Nalbandian and Mr. Cooney observed these same fire patterns leading to the same conclusion in their analysis. However, the heating subsystem was too badly destroyed by the fire to accurately determine the precise ignition point. Since the evidence indicates that fire originated in that location, and that the water tank had been leaking onto these electrical components for some time, it is logical to opine that carbonization of the electrical insulation occurred leading to ignition of the insulation or combustible components in close proximity. This is not unsupported speculation as Magistrate Judge Almonds contends, but a scientific opinion based on observable evidence and fundamental engineering and fire investigation principles.

Further, even if the Court determines that such an absolute conclusion cannot be drawn from the evidence, there is no denying that sufficient circumstantial evidence exists for such an opinion. The Rhode Island Supreme Court has determined that "[t]he principle that probative circumstantial evidence may create the inferences of fact not otherwise subject to direct proof is entirely consonant with the theory of strict liability in tort. . . . No direct evidence need be introduced if circumstantial evidence permits the inference that the injury was caused by a defect existing at the time the product left the manufacturer's or seller's control. Accordingly, a plaintiff may rely upon circumstantial evidence, and the inferences that may reasonably be drawn therefrom, to prove his case." *Geremia v. Benny's Inc.*, 119 R.I. 868, 872-873 (1978); See also *Thomas v. Amway Corp*, 488 A.2d 716, 722 (R.I. 1985). As noted by the Rhode Island Supreme Court, it would appear that if the Plaintiff is unable to directly prove the precise ignition mechanism,

proof of the root cause likely causing such a malfunction combined with evidence that such a malfunction occurred, will be sufficient. Mr. Nalbandian and Mr. Cooney found clear evidence of a defect which could cause an electrical fire. Mr. Davoodi, Mr. Nalbandian, and Mr. Cooney observed burn patterns indicating the fire clearly originated within the electrical heating sub-system of the water dispenser. Uncontested is the fact that a fire did occur. Certainly there is sufficient direct evidence to allow this matter to go to the jury to determine the weight to be afforded to these opinions.

Since Mr. Cooney and Mr. Nalbadian's opinions, as delivered in their depositions, are entirely consistent with the evidence and fundamental engineering principles, they should be allowed to testify.

**II. The Plaintiff's case should not be dismissed without, at a minimum, an opportunity for an evidentiary hearing with expert testimony.**

Summary judgment is a harsh result which would foreclose the Plaintiff's right to recover for the damages it incurred from the true tortfeasor. Indeed, summary judgment is especially onerous in this matter since the expert opinions at issue are complex and should require a complete analysis pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). As noted previously, Magistrate Judge Almond would not entertain any expert testimony and the Plaintiff was forced to rely on the deposition testimony shaped by the Defendants' examination. This is not an equitable result and is not in line with the prevailing caselaw of this jurisdiction.

When an expert's testimony is challenged, the standard inquiry involves an evidentiary hearing pursuant to Fed. R. Evidence 104, in which an expert is subject to *voir dire*. "When uncertainty attends a proffer of opinion evidence, *voir dire* screenings

are standard fare. *See, e.g., Tokia Marine & Fire Ins. Co. v. Grove Mfg. Co.*, 958 F.2d 1169, 1175 & n.4 (1st Cir. 1992); *Freeman v. Package Mach. Co.*, 865 F.2d 1331, 1337 (1st Cir. 1988)." *US v. Sepulveda,* 15 F.3d 1161, n.15 (1st cir 1993). "While the Supreme Court has given trial courts substantial latitude in deciding the necessary procedure to test a potential expert's reliability, . . . conducting a voir dire hearing in limine has become an accepted practice in the federal courts when an opposing party raises a material dispute as to the admissibility of expert scientific evidence. . . . The First Circuit has recognized that the ultimate purpose of a *Daubert* inquiry is to determine whether the expert's testimony will aid the jury in resolving a disputed issue. *Cipollone v. Yale Indus. Prod. Inc.*, 202 F.3d 376, 380 (1st Cir. 2000). The Court refuses to make evidentiary rulings on the admissibility of proffered expert testimony in a vacuum and without the benefit of the expert's testimony or that of any expert offered to oppose it. . . . A Rule 104(a) evidentiary hearing is the proper vehicle to evaluate the admissibility of a plaintiff's proffered expert testimony." (Citations omitted.) *Hall v. Eklof Marine Corp.*, 339 F.Supp.2d 369, 381 (D.R.I. 2004); *see also McConaghy v. Sequa Corp.*, 294 F.Supp.2d 151, 169 (D.R.I. 2003).

Indeed, such inquiries are especially important in the summary judgment setting, and abridged inquiries should only occur in the most clear cut of circumstances. "The fact that *Daubert* can be used in connection with summary judgment motions does not mean that it should be used profligately. A trial setting normally will provide the best operating environment for the triage which *Daubert* demands. *Voir dire* is an extremely helpful device in evaluating proffered expert testimony, and this device is not readily available in

the course of summary judgment proceedings. Moreover, given the complex factual inquiry required by *Daubert,* courts will be hard-pressed in all but the most clearcut cases to gauge the reliability of expert proof on a truncated record. Because the summary judgment process does not conform well to the discipline that *Daubert* imposes, the *Daubert* regime should be employed only with great care and circumspection at the summary judgment stage." *Cortés-Irizarry v. Corporación Insular de Seguros*, 111 F.3d 184, 188 (1st Cir. 1997). While Magistrate Judge Almond determined that this was such a clear cut case, as previously noted, he was relying on opinions contained in the Plaintiff's experts' report and not the articulated opinions relayed during their deposition testimony. Clearly, those opinions, as outlined in the preceding section, do not falter to such a point where this is a clear cut case, but rather a case involving complex grounded scientific opinions which require a full inquiry.

At a minimum, the Plaintiff should have been given the opportunity to complete the record by way of expert testimony at an evidentiary hearing. Since this opportunity was not given, the court was forced to rely on snippets of deposition testimony which was crafted solely by the Defendants. Since the Plaintiff's entire cause of action is at jeopardy, surely a further inquiry was necessary in the interests of justice.

**C. CONCLUSION**

Magistrate Judge Almond determined that Mr. Nalbandian and Mr. Cooney did not "provide a scientific basis for the heat sensor causation theory, and the theory did not withstand scrutiny when examined at their depositions. It is no more than unsupported speculation, and is thus inadmissible." As a result, Magistrate Judge Almond decided

that the experts should be precluded and the Defendants' Motion for Summary Judgment granted.

The aforementioned findings were made in the absence of testimony from either Mr. Nalbandian or Mr. Cooney. Indeed, the Court's clerk informed undersigned counsel that no testimony would be permitted at the hearing of this matter. As such, Magistrate Judge Almond's decision was based purely on the experts' report, the Defendants' brief which contained numerous factual inaccuracies, and snippets of the experts' depositions carfted by the Defendants. As has been demonstrated, Magistrate Judge Almond improperly ignored key statements from the Plaintiff's experts which amended the opinions contained in their report. In addition, Magistrate Judge Almond disallowed the Plaintiff from presenting the full spectrum of its experts' opinions through testimony at an evidentiary hearing. A copy of the transcript for the hearing before Magistrate Almond is attached hereto as Exhibit F.

WHEREFORE, the Plaintiff, HARTFORD INSURANCE COMPANY, respectfully requests that this Honorable Court reverse Magistrate Judge Almond's Report and Recommendation. In the alternative, the Plaintiff requests this Honorable Court to reverse Magistrate Judge Almond's Report and Recommendation and order an evidentiary hearing which allows for testimony from the contested experts.

THE PLAINTIFF,
Plaintiff, The Hartford Insurance Company,
As Subrogee of Alberto Carvalhal,
By its attorneys,

Case 1:06-cv-00362-S-LDA Document 57-2 Filed 10/10/2007 Page 12 of 12

/s/ Erik Loftus, Esq.
Law Office of Stuart Blackburn
Two Concorde Way
P.O. Box 608
Windsor Locks, CT 06096
(860) 292-1116
(860) 292-1221 fax

/s/ Richard A. van Tienhoven- #2628
/s/ Kevin S. Cotter - #3112
van Tienhoven & Cotter, Limited
312 South Main Street
Providence, RI 02903
(401) 454-5350
(401) 454-5170 Fax

Dated: